UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 9:16-CV-81525-ROSENBERG/HOPKINS

GLADSTONE CONSULTING, INC.,
AUBREY W. GLADSTONE,
HARBOUR DRIVE, LLC,
JAX ASSET/DEBT MANAGEMENT, INC.
& EPIX HOLDINGS CORPORATION,

Plaintiffs,

v.

MILES & STOCKBRIDGE P.C.,

Defendant.
_______________________________________/

**ORDER DENYING DEFENDANT'S MOTION TO STAY**

This matter is before the Court on Defendant Miles & Stockbridge P.C.'s Motion to Stay or Alternatively to Dismiss [DE 27]. The Motion has been fully briefed. For the reasons set forth below, the Motion is denied.

## I. BACKGROUND[1]

This case concerns an investment. Plaintiffs, clients of Defendant, were introduced to another client of Defendant. That client is named Jack Dell. Jack Dell was the primary shareholder and chairman of a company called Oak Rock. On Defendant's advice, Plaintiffs invested in Oak Rock. Later, Defendant learned that Oak Rock was a Ponzi scheme. At Jack Dell's urging, Defendant did not inform Plaintiffs of this knowledge. The manager of Oak Rock ultimately admitted Oak Rock was a Ponzi scheme and pled guilty[2] to federal charges. After

[1] These facts, accepted as true, come from Plaintiffs' operative complaint at docket entry 20, pages one through six. *See, e.g.*, *Picazio v. Melvin K. Silverman & Assoc., P.C.*, 965 F. Supp. 2d 1411 (S.D. Fla. 2013).
[2] Plaintiffs' complaint only states that Oak Rock's manager was convicted; attachments to the briefing papers before the Court clarify that the manager pled guilty. *See* DE 20 at 5, DE 27-1 at 8.

Oak Rocks' manager pled guilty, Oak Rock imploded and Plaintiffs lost their investment. These events spanned a significant amount of time—approximately one year—and, during that time, Plaintiffs were not informed of problems at Oak Rock by Defendant. As a result, Plaintiffs did not exercise their right to redeem their investment. Plaintiffs allege that had they known what Defendant knew about Oak Rock, they would have exercised their right to redeem. Because Defendant was legal counsel to Plaintiffs, Plaintiffs argue, Defendant had a duty and obligation to inform Plaintiffs of what it knew. Instead of informing Plaintiffs, Defendant is alleged to have actively engaged in concealing information from Plaintiffs while it was representing Jack Dell in connection with investigations into the Oak Rock Ponzi scheme by law enforcement.

Plaintiffs filed suit against Jack Dell in Florida state court. That case remains pending. Plaintiffs also filed suit against Defendant in state court. That case was removed and is the case before the Court. Defendant has moved for this case to be stayed pending the outcome of Plaintiffs' state court suit against Jack Dell.

## II. ANALYSIS

Defendant moves for this Court to stay or, in the alternative, dismiss Plaintiffs' counts one through four. Those counts are, respectively: Professional Negligence (Count I), Breach of Fiduciary Duty (Count II), Fraud (Count III), and Negligent Misrepresentation (Count IV). Defendant argues that these counts should be stayed pending the results of a case currently being litigated in the Florida Fifteenth Judicial Circuit Court, *Gladstone Consulting, Inc. v. Prime Plus Acquisition Corp. et al.*, No. 2014-CA-001988MB.

Defendant relies solely upon Florida law to argue that this case should be stayed. Defendant's argument is premised upon cases such as *Burgess v. Lippman*, 929 So. 2d 1097 (Fla. Dist. Ct. App. 2006), which stands for the well-established proposition that, at least for Florida

state courts, a claim for legal malpractice should be stayed or abated until such time as an underlying claim is resolved. Although only one of Plaintiffs' counts, Count I, is clearly a legal malpractice claim, Defendant argues that four counts, including Plaintiffs' count for fraud, should be stayed pursuant to cases such as *Burgess*.[3]

Defendant's arguments are best addressed in two parts. First, much of the case law cited by Defendant either discusses or relies upon the standard applicable to a motion to stay a litigation malpractice claim; for the reasons discussed below, the correct standard in this case is the standard applicable to a motion stay a transactional malpractice claim. Second, because Defendant's memorandum of law is silent as to the precise standard that governs motions to stay transactional legal malpractice claims, the Court discusses case law that sets forth the standard.

With respect to whether Plaintiffs' claims arise from litigation malpractice, Florida law is clear that when a lawyer is alleged to have committed malpractice in connection with a case, that case must be finalized—either through judgment, settlement, or mandate—before a claim for legal malpractice may be brought. *See, e.g.*, *Bierman v. Miller*, 639 So. 2d 627 (Fla. Dist. Ct. App. 1994). Faced with such a situation, federal courts have elected to dismiss a plaintiff's legal malpractice claim without prejudice so that the claim may be brought in Florida state court. *See Picazio v. Melvin K. Silverman & Assoc., P.C.*, 965 F. Supp. 2d 1411 (S.D. Fla. 2013). The operative question for federal courts, when considering legal malpractice claims, is whether the claim is ripe for adjudication. *Id.*

Here, Plaintiffs' allegations of legal malpractice are not connected to litigation. Instead, Plaintiffs' allegations are that they were advised to invest with another client of Defendant's, that their investment was lost, that Defendant had knowledge that would have prevented their loss,

[3] Defendant cites no legal authority for the proposition that each of the counts at issue should be treated as a legal malpractice claim.

that Defendant had a duty to provide that knowledge, that Defendant affirmatively chose to conceal that knowledge from Plaintiffs, and that if Plaintiffs had known what Defendant had known they would have redeemed their investment prior to their loss. Thus, Plaintiffs' allegation is that Defendant committed malpractice in the context of investment advice or advice in general—not in the context of a case litigated before a court. Therefore, while it is true that a state court case is currently pending that relates to the events at issue in this case, the alleged *malpractice* in the instant case is not derived from the pending state court case. As a result, the legal standard applicable to Defendant's Motion is comparatively flexible (as compared to litigation malpractice) under both Florida and federal law, as discussed below.

In *Porter v. Ogden, Newell & Welch*, the Eleventh Circuit discussed the state of Florida law on a stay for legal malpractice claims. 241 F.3d 1334 (2001). After drawing a distinction between litigation malpractice and transactional malpractice, the Eleventh Circuit stated that for transactional malpractice: "Instead of setting a fine-line, Florida courts hold that a malpractice action accrues when 'it is reasonably clear that the client has actually suffered some damage from legal advice or services.'" *Id.* at 1339 (citing *Throneburg, III v. Boose, Casey, Ciklin, Lubitz, Martens, McBane & O'Connell, P.A.*, 659 So. 2d 1134, 1136 (Fla. Dist. Ct. App. 1995)). Florida courts therefore "draw a distinction between knowledge of actual harm . . . and knowledge of potential harm." *Id.* (citation omitted). For example, when a plaintiff incurs costs remedying potential malpractice, that is sufficient for a legal malpractice claim to be ripe for adjudication in federal court. *Id.* This is because the ultimate question is whether a plaintiff has established the existence of redressable harm. *Id.* at 1339-40; *see also Jones v. Law Firm of Hill & Ponton*, 223 F. Supp. 2d 1283, 1287 (M.D. Fla. 2002) ("Florida cases should not be read to

require every party who suffers a loss and attributes that loss to legal malpractice to obtain a final determination . . . before asserting a claim for legal malpractice.”).

Accepting Plaintiffs’ allegations as true, the Court therefore considers whether it is “reasonably clear that the [Plaintiff] has actually suffered some damage from legal advice or services.” *Porter*, 241 F.3d at 1339. Plaintiffs have alleged they invested in a Ponzi scheme at the advice of Defendant. *See* DE 19 at 4-5. Defendant became aware of the Ponzi scheme. *Id.* Defendant chose not to tell Plaintiffs because the primary owner of the Ponzi scheme company was a client of Defendant. *Id.* The manager of the Ponzi scheme pled guilty to federal charges in federal court. *Id.* at 5. Plaintiffs lost their investment in the Ponzi scheme company. *Id.* at 6. It is therefore clear that Plaintiffs have alleged that they have suffered actual harm. Their investment has been lost in a Ponzi scheme. The Court concludes that the causal nexus between Plaintiffs’ actual harm and Defendant’s legal services is best summarized in the following paragraph in Plaintiffs’ complaint:

> 24. Based upon M&S’ affirmative misrepresentations regarding the status and effectiveness of the oversight, management and safeguards in place at Oak Rock, and based upon M&S’ failure to disclose the existence of the Clampdown or its red flags, GCI refrained from redeeming its $1.3 million investment in the Fund when those opportunities were available (2012 and early-2013), thereby causing the loss of GCI’s $1.3 million investment in the Fund. Had M&S disclosed what it knew to Gladstone or GCI regarding these matters, GCI would have redeemed its investment.

*Id.* at 6. Thus, it is Plaintiffs’ allegation that (i) it was within Defendant’s power to give Plaintiffs the information that Plaintiffs’ investment was at great risk and (ii) if Plaintiffs had that information, they would have redeemed their investment. It is Plaintiffs’ contention that not only

was that information withheld, it was actively concealed. *Id.* The existence of the Ponzi scheme would also now appear to be an objective fact to this Court in light of Plaintiffs' allegation that the manager of Oak Rock has pled guilty to his participation in such.

Here, Plaintiffs' loss of their investment in a Ponzi scheme is different than the plaintiff's loss in the primary case relied upon by Defendant—*Burgess v. Lippman*, 929 So. 2d 1097 (Fla. Dist. Ct. App. 2006). In *Burgess,* the plaintiff alleged his funds had been converted and his attorney should have warned him about the individual who allegedly converted the funds. *Id.* at 1098. The *Burgess* court concluded that the threshold question of whether or not the funds were converted was critical to deciding whether the Plaintiff could show a causal connection between his damages and his attorney's legal services. *Id.* at 1099. As a result, the *Burgess* court concluded that the plaintiff's malpractice claim had to be stayed pending a court's determination of the conversion claim. *Id.* By contrast, the Defendant in this case is alleged to have learned that Plaintiffs' investment had been made into a Ponzi scheme. Viewing all inferences in Plaintiffs' complaint in Plaintiffs' favor, a Ponzi scheme is such a patently criminal enterprise, and the ultimate loss of investor's funds in Ponzi schemes is so well known, that the Court concludes that Plaintiffs' burden to show a causal connection is much lighter than the plaintiff in *Burgess*. There is no indication in the *Burgess* decision that the plaintiff's funds had been placed into a criminal scheme, that the alleged converter of the funds had pled guilty to criminal charges, or that the facts surrounding the alleged conversion were such that it was patently obvious to legal counsel that the funds were in danger of criminal activity. Similarly, the *Burgess* court noted that it was possible that the alleged converter did not actually convert the plaintiff's funds, which stands in contrast to the instant case where, viewing all inferences in Plaintiffs' favor, there is no question that *someone* at Oak Rock caused damage to Plaintiffs. *Id.*

Defendant does not argue that there was no Ponzi scheme.[4] The Court therefore concludes that Plaintiffs have alleged sufficient facts that they have suffered an actual harm from legal services and Defendant's Motion is denied on this basis.

Furthermore, the Court rejects Defendant's assumption that if a jury in the currently pending state court case were to find that Jack Dell is not liable to Plaintiffs, that it would necessarily follow that Plaintiffs would not be entitled to damages in the instant case. Regardless of whether Jack Dell is liable for fraud[5] to Plaintiffs, it is Plaintiffs' contention that, at a minimum, extremely troubling signs arose that signaled Oak Rock *could* be a Ponzi scheme and Defendant neither made Plaintiffs aware of this information nor informed Plaintiffs it had developed a conflict of interest. Because Plaintiffs have alleged that Defendant was representing Plaintiffs as legal counsel at that time, it would appear to this Court that a jury could find Defendant liable even if Jack Dell was not. Stated another way, while an exonerated Jack Dell might mean that Defendant is not liable for recommending an investment with Jack Dell to Plaintiffs, the Court fails to see how this would resolve Plaintiffs' contention that Defendant should have warned Plaintiffs of serious potential criminal dangers *after* the investment was made and *after* the warning signs arose.[6] The Court is unaware of any claims in the state court that would eliminate "every reasonable possibility of redressable harm" in the instant case. *Coble v. Aronson*, 647 So. 2d 968, 969 (Fla. Dist. Ct. App. 1994). Plaintiffs have alleged the

---

[4] As Defendant has not answered Plaintiffs' complaint, Defendant has yet to admit or deny the existence of the Ponzi scheme.

[5] Plaintiffs have brought claims for securities violations, fraud, conspiracy, negligent misrepresentation, and breach of fiduciary duty against Jack Dell. DE 27-1.

[6] While Defendant argues in its motion that the pending state court case "will address . . . whether [Plaintiff] held any redemption rights" the Court is unable to locate any count for a declaratory judgment on this issue in the pleadings provided by Defendant. DE 27 at 2; DE 27-1. While redemption rights may factor into Plaintiffs' claims and evidence in state court, the state court judgment will determine whether Jack Dell committed fraud, formed a conspiracy to commit fraud, violated a fiduciary duty, or violated securities regulations. Even if redemption rights are referenced in the state court complaint, no argument invoking the doctrine of collateral estoppel is before this Court. Finally, there is no fully developed argument before the Court that if Plaintiffs never possessed redemption rights they could not, as a matter of law, have suffered damages in this case.

existence of redressable harm and this too is a basis upon which Defendant's Motion is denied. *See Porter*, 241 F.3d at 1338-40.

To the extent Defendant seeks for Plaintiffs' counts to be severed in light of the claims pending against Jack Dell—such as Plaintiffs' claims being divided between events that arose prior to Plaintiffs' investment and events that arose after Plaintiffs' investment—that is not a motion before this Court. To the extent Plaintiffs tangentially suggest that a state court judgment would bind this Court on the *factual issue* of whether Plaintiffs had redemption rights in their investment and that, as result, Plaintiffs' claims should be stayed, that argument is neither properly argued nor properly briefed before this Court.

## III. CONCLUSION AND RULING

For the foregoing reasons, there is no basis for the Court to stay or dismiss any of Plaintiffs' counts and Defendant's Motion to Stay or in the Alternative Dismiss [DE 27] is **DENIED**. All of Defendant's other arguments or requests for relief not addressed in this Order are denied without comment. Defendant shall answer Plaintiffs' complaint within five (5) days of the date of rendition of this Order.

**DONE and ORDERED** in Chambers, Fort Pierce, Florida, this 18th day of April, 2017.

ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE